The consent of some of the legatees cannot bind the others, nor, of course, the infants.

It would unquestionably have been competent for the adult legatees to retain the appellant, and make such agreement for compensation as would have made them liable personally; and it being fairly made, such an agreement would be free from objection at law or in equity.

With the unreasonableness of the resistance to this claim of the appellant, which, in this case, is for a valuable service, rendered in good faith, far beyond what his duties as executor required, or with the eminent propriety of payment, by the adult legatees, for a service from which they have apparently derived so considerable a benefit, we cannot deal.

On this appeal, we can only say the judgment must be affirmed.

HUNT, Ch. J., MASON, GROVER and DANIELS, JJ., concurred with WOODRUFF, J., for affirmance.

JAMES, J., read an opinion for reversal. LOTT and MURRAY, JJ., were also for reversal.

Order affirmed without costs.

---

PHILO STEVENS and HENRY DWIGHT, Respondents, *v.* THE PHŒNIX INSURANCE COMPANY OF HARTFORD, Appellant.

Where the defendant, citizen of another State, regularly, and strictly in accordance with the act of congress of 1789, known as the "judiciary act," files his petition in the State court for the removal of the cause to the United States Circuit Court, and a sufficient bond, which is offered for the approval of the State court, the State court is *ipso facto* ousted of jurisdiction; and whether an order for removal is granted or denied by the State court, all further proceedings therein are *coram non judice* and void.

And where, in a case within the act, after such petition has been filed and

bond offered, the State court refuses to order the removal, the defendant answers, the cause is tried and judgment is entered up against the defendant, such judgment will be reversed by this court, as without jurisdiction.

It has long been settled, that a corporation is a citizen of the State creating it, within the meaning of the judiciary act of congress. Such corporation does not lose that citizenship by appointing an attorney in another State, in compliance with its statutes, upon whom process may be served, and doing business in such State, under a certificate of officers thereof, authorizing it to transact business therein subject to visitatorial powers.

Accordingly, a fire insurance company, organized under the laws of the State of Connecticut, and having its principal office therein, but doing business in this State, under our statutes, is, on being sued in our courts, entitled to a removal of the cause to the United States court.

(Argued June 21, 1869; decided September 24, 1869.)

APPEAL from a judgment of the General Term in the fifth judicial district, affirming a judgment for the plaintiffs on the report of a referee.

This is an action brought on a verbal contract of insurance, alleged to have been made by the defendants, through their agents, with the plaintiffs.

1. The action was commenced by the service of a summons, on the 6th day of February, 1863, upon the attorney for the defendants, appointed for that purpose under the statute of New York, directing such appointments by foreign insurance companies transacting business in this State. (Session Laws, 1853, chap. 466, § 23.)

The defendants are a corporation duly organized under the laws of the State of Connecticut, located in the city of Hartford, and doing business there; and this is alleged in the complaint.

On the 25th day of February, 1863, the defendants entered their appearance in this action in the county of Oswego, where the venue was laid, and at the same time filed in said office their petition for the removal of this cause to the Circuit Court of the United States for the northern district of New York, together with the bond required in such cases by the judiciary act of the United States. On the same day their attorney had procured an extension of the time to answer.

On the same day, also, the defendants' attorney served a copy of these papers on the plaintiffs' attorneys with a notice of motion for the Special Term of the Supreme Court, to be held at Utica, the third Tuesday of March, 1863, that the court accept the bond, grant the prayer of the petition, and thereupon proceed no further in the cause. That motion was opposed by the plaintiffs and denied by the court. The opinion of the court (Justice ALLEN) is reported in 24 Howard's Practice Rep., 517. The defendants appealed from that order to the General Term, and the General Term affirmed the order, July 7, 1863. The defendants then answered the complaint, and among other answers, pleaded the judiciary act of the United States, and the aforesaid proceedings in bar of the jurisdiction of the Supreme Court of New York.

Upon the trial of the cause before the referee, the defendants proved all of the aforesaid facts, and claimed that the Supreme Court had no jurisdiction, and that the complaint should be dismissed. The referee denied this motion and the defendants excepted.

The referee reported in favor of the plaintiffs, and judgment was perfected on this report, January 4, 1864.

The defendants duly excepted, among other things, to his finding that the Supreme Court had jurisdiction after the proceedings aforesaid for removal.

The General Term affirmed the judgment and the defendants appealed to this court. In addition to the facts showing a want of jurisdiction, it further appeared on the trial, that by the charter of defendants, their policies, and all other contracts, "shall be signed by the president or vice-president, and countersigned by the secretary." Dada and Sawyer, the agents who made this alleged insurance, were authorized to "make insurance by policies," " to be authorized by the said Dada and Sawyer." That the alleged contract of insurance was verbal, and was made September 6th, 1862, and the fire occurred October 4th, 1862. That after the fire, Dada and Sawyer issued to plaintiffs a " certificate of insurance." That in the proofs of loss furnished by the plaintiffs, that " certifi-

cate " is falsely alleged to have been issued September 6th, 1862, and that it is the only contract of insurance set forth in these proofs of loss.

*Samuel Hand,* for the appellants, cited on the question of foreign citizenship of the defendants, *Merrill* v. *Van Santvoord* (34 N. Y., 218, *et seq.*); *Fisk* v. *Rock Island R. R. Co.* (3 Abb. N. S., 454); *Louisville R. R.* v. *Letson* (2 How. U. S. R., 497, 558); *Ohio, &c., R. R. Co.* v. *Wheeler* (1 Black., 286); *Lafayette Ins. Co.* v. *French* (18 How. U. S. R., 227); *Covington Drawbridge* v. *Shepard* (20 How. U. S. R., 227); *Marshall* v. *Baltimore, &c. R. R.* (16 How. U. S. R., 314); 14 id., 80; *Dennistoun* v. *N. Y. & N. H. R. R. Co.* (1 Hilton, 62); *Shelby* v. *Hoffman* (7 Ohio N. S., 450); *Kraanshaar* v. *New Haven St. Boat Co.* (General Term, N. Y. Superior Court, MONELL, J.); *Brooklyn Ferry Co.* v. *Norwich & New York Steamboat Co.* (MS. opn., General Term, 2d district.) On the effect of filing petition and bond regularly, upon the proceedings in the State court, he cited *Gordon* v. *Sangest* (16 Peters, 97); *Kanouse* v. *Martin* (15 How. U. S., 198).

*John H. Townsend,* for the respondents, cited on the question of jurisdiction, *Barney* v. *Globe Bank* (Note 1, Am. Law Reg. N. S., 232); 1 Black. U. S. R., 286; Ang. and Ames on Corporations, 318, 342, 345; *Androscoggin R. R. Co.* v. *Stevens* (1 Am. Railway Cases, 140, note 1); 2 Abb. N. S., 357; *Cooley* v. *Lawrence* (5 Duer, 605); *Quinn* v. *Tillar* (2 Duer., 648); *Anderson* v. *Manufacturers' Bank* (14 Abb., 436).

MASON, J. It was decided in the *Bank of Augusta* v. *Earle* (13 Peters, U. S. R., 512), that a corporation can have no legal existence out of the bounds of the sovereignty by which it is created; that it exists only in contemplation of law and by force of law; and when that law ceases to operate, the corporation can have no existence. It must dwell in the place of its creation. The same was affirmed in the case of

the *Louisville, Cincinnati and Chicago Railroad Company*
v. *Letson* (2 How. U. S. R., 497). It was also held in that
case that a corporation, created by and transacting business
in a State, is to be deemed an inhabitant of the State, capa-
ble of being treated as a citizen for all purposes of suing
and being sued, and that the averment of the facts of its
creation and the place of transacting business is sufficient to
give the Circuit Court of the United States jurisdiction.

This question was very fully reconsidered in the case of
*Marshall* v. *The Baltimore and Ohio Railroad Company*
(16 How. U. S. R., 314); and was reaffirmed, and it was
held in that case, that a citizen of Virginia might sue the
Baltimore and Ohio Railroad Company in the Circuit Court
of the United States of Maryland, and that an averment
that defendants are a body corporate, created by the legislature
of Maryland, was sufficient to give the court jurisdiction.

The question was again considered in the case of the
*Covington Bridge Company* v. *Shepherd* (20 How. U. S. R.,
227, 232), and it was there said that this must be regarded
as the settled law of the court; and it was further held in
that case, that an averment, that the Covington Bridge Com-
pany were citizens of Indiana, was sufficient to give juris-
diction to the Circuit Court of the United States, because the
company was incorporated by a public statute of the State,
which the court was bound judicially to notice. The juris-
diction in these cases was maintained upon the assumption,
and the decision of the court was, that a corporation is a
citizen within the meaning of the judiciary act. I know the
earlier cases held otherwise, but they are disapproved by
these cases, where the question was fully considered.

I do not think that the case of the *Ohio and Mississippi
Railroad Company* v. *Wheeler* (1 Black. R. 286), can be
said to interfere with these cases, much less to overrule
them. It is held in that case, that a corporation exists only
in contemplation of law and by force of law, and can have no
legal existence beyond the bounds of the sovereignty by which
it is created, and that it must dwell in the place of its creation.

It is also held, that where a coporation is created by the laws of a State, the legal presumption is that its members are citizens of the State in which alone the corporate body has a legal existence, and that a suit by or against a corporation, in its corporate capacity, must be presumed to be a suit by or against citizens of the State which created the corporation body; and no averment or evidence is admissible for the purpose of withdrawing the suit from the jurisdiction of a court of the United States.

These views are confirmed in the opinion delivered in this court, so far as that case goes, in the case of *Merrick* v. *Van Santvoord* (34 N. Y. R., 218). It is there said, that a corporation is an artificial being, and has no dwelling, either in its office, its depots, or its ships. Its domicil is the legal jurisdiction of its origin, irrespective of the residence of its officers, or the place where its business is transacted. It is also said that a corporation cannot migrate from one sovereignty to another, so as to have a legal, local existence within the latter sovereignty. (See S. C., page 220.) The fact that this corporation appointed an agent within this State, and does business here, or that a portion of its directors reside here, does not in any manner affect its domicil or its right to be regarded a citizen of another State. (34 N. Y. R., 205; 2 Abbot N. S., 357; 3 Metcalf R. 564.)

By the express language of the 12th section of the judiciary act, when the defendant filed his petition, etc., in this case, it became the duty of the State court to accept the security and proceed no further in the cause.

This act is mandatory upon the State court; and when, as in this case, the defendant complies strictly with the act, the State court has no further jurisdiction to proceed in the cause. (*Gordon* v. *Langest*, 16 Peters R. 97.) And every step subsequently taken in the cause was *coram non judice.* (16 Peters R. 97.) It follows from the views above expressed that the judgment of the Supreme Court must be reversed.

All the judges concurred for reversal on this ground.

LOTT, J., also read an opinion for reversal, on the ground

that the agents had no power to make verbal contracts; but this point was not passed upon by the court.

Judgment reversed.