# IN THE MATTER OF THE ESTATE OF JOSE A. da SILVA.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED MARCH 27, 1903.          DECIDED MAY 28, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

Assuming that a final order of distribution may be revoked in probate
on motion and that such an order of revocation is not final for the
purposes of appeal by the parties aggrieved thereby, still an at-
torney of one of the parties cannot properly, as an incident to such
order of revocation, be required to pay into court to await further
proceedings a sum paid by his client to him as his fee out of the
amount so distributed to such client, and such an order is final
for the purposes of appeal and the attorney may appeal therefrom
in his own right.

## OPINION OF THE COURT BY FREAR, C.J.

It is not altogether easy to say what ought to be done in a
case like this, the record in which teems with irregularities, if
not reversible errors, from beginning to end. After distributing
half the estate to Thomas Fitch, attorney-at-law for the dece-
dent's widow, a resident of British Guiana (why distribution
should be made to the attorney-at-law rather than to the heir
does not appear), the Circuit Judge allowed time to produce
evidence of other heirs,—upon the expiration of which time,
such evidence not being produced, the remaining half was dis-
tributed to the same attorney. Some time afterwards evidence
was received as to the existence of a sister of the deceased in
Madeira, whereupon the attorney in fact of both the widow and
sister (not the widow and sister themselves by their attorney)

moved the judge to modify the second order of distribution (without suggesting in what respect) and also to fix the fees of the attorney at law of the attorney in fact (not of the widow and sister) in the matter "for the revocation of the administrator" of the estate. (Why the attorney of the widow should ask for a modification of an order distributing the whole estate to her, when, if she wished the sister to get her share, she could pay it over to her, does not appear. Why the attorney in fact should act for both widow and sister, if their interests were adverse, also does not appear. Why he should ask for a modification or revocation of the final order for the purpose of having the fees of the attorney at law fixed, and why he should ask the judge to fix those fees at all, they being a matter of private arrangement, also does not appear.) Apparently the attorney in fact after settling with the attorney at law, in accordance with what was their construction of a special contract as to fees, came to the conclusion that under that construction the fees exceeded what the services were worth, which was very likely the case. The Judge thereupon revoked the second order of distribution on the ground that the widow was not the sole heir and directed the attorney at law (not the widow) to pay into court to "await further proceedings" the sum ($486.76) paid under that order. Later, on the same day, on a showing that a part of that sum ($229.16) had been paid by said attorney to the attorney in fact, he modified the order and directed the attorney at law to pay in only the balance ($257.60). It is from this last order that the attorney at law appeals. The Judge also directed the attorney in fact of the widow to pay in the $229.16, but afterwards directed this sum to be paid back to him on the ground that he was authorized to keep it as attorney in fact for the sister, and that the order to pay it into court was inadvertently made. (Why the money should be ordered paid to the attorney in fact of the sister before the proposed further hearing as to whether she was entitled to it and before any adjudication to that effect does not appear.)

Whether a final order of distribution can be revoked on motion in probate, in the absence of fraud or mistake, it is

unnecessary to decide. Whether such an order of revocation is final for the purposes of appeal, it is also unnecessary to decide. No such appeal is brought here by any party shown to be entitled to appeal. Neither the widow nor the sister appeals. The appeal is taken solely by the attorney at law of one or both of the interested parties, and he appeals in his own right. He, of course, could not appeal from an order against his client, such as an order opening the decree of distribution. But he may appeal as a party in interest from the order to pay money into court, on the theory that the amount ordered to be paid had been retained by him as his fee in settlement with his client, that is, as if he had paid over to the attorney in fact of the widow the entire amount received from the court and had been paid back the amount of his fee. We had some doubt at first, on account of the unsatisfactory state of the record, whether it was sufficiently clear that a settlement had been made between the attorney at law and his client, so as to vest the sum retained by the former in him in his own right, but on the whole we think that is shown to be the fact, and therefore the attorney at law is entitled to appeal from the order in his own right. The order to pay money into court is final for the purposes of appeal as to him. Indeed, this would seem to be a case of want of jurisdiction to make the order rather than of mere error. What authority was there to order a third party to pay into court a sum of money of his own in a case in which he had no interest and to which he was not a party, and the fact that the order was also to "await further proceedings" did not make it interlocutory so as to preclude an appeal. A judge cannot order people at random to pay money into court to await his pleasure. The attorney was clearly entitled to the possession of the money as against the court, and an order depriving him of that possession would be final for the purposes of appeal as much as an order depriving him of the possession of a tract of land belonging to him would be. There was moreover no intimation as to what was to be done with the money or what further proceedings it was to await. Apparently the order was an adjudication that as between the

attorney and the estate the money belonged to the estate and that was final as to him for the purposes of appeal. He was deprived of a substantial right—not only of the right of possession but of the right of property as well. If he should get any of it back, so far as this order contemplated, it would be as an incidental result of a further distribution of the estate.

The order appealed from is reversed and the case remanded to the Circuit Judge for further proceedings consistent herewith.

*Henry E. Highton* for appellant.

*Geo. A. Davis* for defendant.

### DISSENTING OPINION OF GALBRAITH, J.

I am convinced that the appeal should be dismissed and therefore do not concur in the judgment of the majority of the court.

On November 25, 1901, a Circuit Judge of the First Circuit Court, sitting in Probate, adjudged the surviving widow, Antonia da Silva, to be the sole heir of the deceased, Jose da Silva, and made an order of final distribution of the estate, directing the clerk of the court to pay to the attorney of the widow, Thomas Fitch, Esq., all of the money in his hands belonging to the estate. There was paid to the attorney under said order the sum of $486.76. There was presented in said cause on January 24, 1902, a motion asking that the order of distribution be modified and that the compensation claimed by Thomas Fitch, Esq., be fixed by the court. A showing was made in support of the motion that a sister and heir of the deceased had been discovered since the making of the order of distribution. In response to said motion the Circuit Judge, on March 6, 1902, ordered that the decree of final distribution be set aside on the ground that it had been made to appear that Jacintha da Silva was a sole surviving sister of the deceased and that the widow was not the sole heir and "further ordered that the sum of $486.75 paid over to Thomas Fitch on or about November 25, 1901, be forthwith paid into court to await fur-

ther proceedings in said matter." On the application of Mr. Fitch the Judge modified this order so that he was directed only to pay $257.60 into court. From this modified order Fitch appealed.

The order appealed from was clearly interlocutory and not final and not an appealable order under the practice in this jurisdiction. *Brown v. Carvalho,* 9 Haw. 180; *Barthrop v. Kona Coffee Co.,* 10 id. 398, 401; *Government v. Smith,* 9 id. 178; *Government v. Ah Sin,* 9 id. 164; *The Queen v. Poor,* 9 id. 399, 401; *Humburg v. Iwamoto,* 13 id. 702.

It has been held by this Court that an order of a probate court revoking an order of final distribution is not a final order and is not appealable. *In re Banning Estate,* 9 Haw. 357. The same ruling has been made in Indiana and California. *Wood v. Wood,* 51 Ind. 141, 142; *Estate of Michael Calahan,* 60 Cal. 232; *Estate Dean,* 63 Cal. 613. This is sufficient reason why the appeal ought to be dismissed.

The money was in the appellee's hands not by virtue of a settlement with his client but by virtue of the order of the Probate Court directing it paid to him,—the order of November 25, 1901—the same order that was revoked and set aside by the order appealed from. This fact is a complete answer to the contention that the court had no power to make the order of revocation. The power that gave could take away. Again the general and inherent power of the court over its orders and judgments was ample to justify the order complained of. That the appellee, who was ordered to repay the money, was a "third party" and not a party to the suit did not lessen the power of the court over him in this instance. He appeared in the proceedings as an attorney of record for some parties of varied interests in the proceeding and induced the court to make the order directing the payment to him of the money ordered returned into court. It is hardly a proper use of terms to designate him as a "third party." A review of the record will possibly justify the conclusion that he was about "first party" all through the proceedings, including the entry of the order of final distribution.

The revocation of the order of final distribution and directing the appellee to pay the money into court was equivalent to granting a rehearing of the order of final distribution. The parties and the money were left in the same relative position to the court that each occupied prior to the passing of the order of final distribution. The matter stood as if that order had never been made. How can this court at this stage of the proceedings tell whether or not the court of probate will err in the final order in the case, or in the further proceedings to be had in the case? This court cannot presume that the court below will so deal with the parties and the money that there will be any dissatisfaction. The appellee may obtain by the final order all that he wants and be satisfied with it. At any rate until that order is made he can have no standing in an appellate court.